Please call the case. Case number 11, 1627 and remarriage of Horace Grant and Donna Grant Weaver. The attorney for the appellant is. I am. Good morning. My name is David Shelton. I represent the attorney for. I am the attorney for the appellant Donna Grant Weaver. Mr. Shelton. Good morning, justices. My name is Paul Feinstein. I represent the appellee Deborah DiMaggio. Thank you. Both of you will be allowed a total of 15 minutes each. So appellant reserve from that 15 minutes however much time you'd like to use for rebuttal. Okay. Thank you. Appellant, Mr. Shelton, you may proceed. May it please the court. First off, I am authorized to practice law. I was at the time I filed this appeal due to acting sometimes as a legal clinic. I find myself in a financial position to where at the beginning of the year I hadn't paid or I hadn't complied with the continuing education program. But by the time I filed my response. You're a member of the Illinois Bar? I am not. Oh, yes, yes, yes, yes, yes. You may proceed, sir. Okay. When Donna came into my office crying and indicating that she was afraid to go to court, thinking that she was going to be jailed. And I learned that this was regarding attorneys fees and child support. I knew that there was something wrong here. So when I reviewed the case, I found that this wasn't simply an isolated incident of some error or abuse of discretion. Rather, what I saw was a pattern of conduct that indicated there were gross deviations from established law and practices. Quite frankly, that I had not seen. When this is brought to the attention of the court, what was done to Donna was described as a bleeding. Now, how someone is in our system of justice and goes through something that's described as a bleeding is shocking to me. Well, that's fine, counsel, but it's frankly not shocking to me. Speaking just for me. The case was up many times in front of the judge over attorney fees. And they don't like that. Judges don't like it when they see the same people in front of them. When the same people in front of them agree to do things and then don't do them. Even though they don't have money. I understand that. So when your client agreed, I'll pay $25,000, I don't doubt for a moment when your brief says. But when she said that, she had told her attorney, I don't have two nickels, I'm living with my mom, I don't have a house, I can't do that. But she agreed to it. And that's not the judge's fault either. The judge will look at it and say, Ms. Shelton, you agreed to this. Which perhaps she should have said, I'm not paying because I don't have two nickels. But go ahead. Okay. Well, we brought this to the court's attention. And where these would happen in the court was eventually stopped by the judge entering a judgment on the matter. We felt that that was not sufficient. And that what the procedures that had occurred needed to be reversed and addressed. Because the judge had still ordered that the attorney's fees would be non-dischargeable in bankruptcy. We felt that was not the law. So we appealed to this court for review of this. But wasn't there a response that probably, again, probably she must, is reading the briefs, that probably your client, I'm sorry, Ms. Grant-Weaver, had told people, well, make it $25,000. I agree to pay it, but I'm going to go across the street to bankruptcy and get it discharged right away. Which, you know, again, judges don't like to hear that. Especially if the attorney's fees are incurred in an effort to get child support payments, which is a point where this post-decree matter, that's what they're called, Ms. Shelton, they're called post-decree matters where everything is agreed to, the divorce is gone, it's years old, and yet they're all still in court. Judges frown on that. And they also frown on the fact that people say, I'll pay $25,000 so you won't lock me up today, but I'm going to divorce court the second I sign the agreement to pay it, and I'm getting out of it because I'm going to declare bankruptcy over a $25,000 debt. They don't like that. And why should we say that's okay? Why should we disagree with the idea of this not being dischargeable in bankruptcy? In what cases do you cite for the proposition the trial court was wrong for saying, and you can't discharge it in bankruptcy? Well, actually, it's the statutes themselves. When they're read with the purposes, they indicate that these statutes are primarily to enforce parental responsibilities and that financial parental responsibility should not be something that is dischargeable. However, the reading of those statutes indicate that applying to this relief is generally for the obligors, and that is the person who is a non-custodial parent and has the obligation to pay these child support or whatever fees they're incurring. We are attacking the procedures here as either void or voidable for several reasons. I understand that with the 1970 Constitution, we have changed our perspective as to how we analyze these cases. I understand that the jurisdiction is granted by the Constitution, and recently with the cases that have been dealing with these cases, there seems to be a lot of attention paid toward admonishing us to change our perspective in our approach to these matters to make sure that we understand that when we complain of these jurisdictional issues, we understand that jurisdiction is granted by the Constitution. However, this is an equation where we have to have a balancing act, where what you do to one side of the equation, you have to do to the other. So on one side, we're dealing with jurisdiction, and then on the other side, we're dealing with a justiciable matter. It's now time for us to start focusing a little bit more on developing what is the concept of a justiciable matter. And while the language of justiciable matters may be new in Illinois, the concept of justiciability has been around in the federal courts for some time. And in order to perfect justiciability, it does not concern just the subject matter. I've seen in the, particularly with cases involving administrative review or administrative agencies, we see that other doctrines involved include the doctrine of primary jurisdiction, standing, whether there is a case is right, and concerning whether a case is right, other doctrines are also included. Why is this not justiciable? How is an agreed order in a post-decree matter where your client agrees to pay $25,000, how is that not properly before the court? Because the legislature mandated that when there was a dispute regarding attorney's fees, it should be submitted to arbitration. And there are some serious policy reasons for that. The legislature recognizes that attorney's fees are contract claims, and they represent a distinct cause of action, which typically are afforded the full litigation procedures that are afforded in our regular civil courts. Counsel, can we go through that analysis of Section 508, it's 508C4, I believe. Correct. There's argument in your opponent's brief that the court waived the requirements of that portion of the statute. Well, what the statute requires is, unlike the court-annexed arbitration, the arbitration regarding attorney's fees is mandated under the legislature. It's not something that the court has just decided we're going to put these in here. What I'm saying is it does say mandatory in the statute, you're right, but the court, the allegation is that the court waived that. Well, the statute provides that waiver is through an opting out, not simply opting out, but an affirmative opting out. Now, the statute does not say what an affirmative opting out is. I did not find any cases that said specifically what an affirmative opting out is, but the arbitration program here is patterned after the one in DuPage, and in there, their affirmative opting out means a written opting out. Counsel, is there any way the court could have done that? I mean, is mandatory mean absolutely mandatory if one party opts out and the other one just says, well, I'm not going to say one way or another, and then doesn't attend the arbitration? Couldn't the court consider that kind of a waiver? I mean, when you say mandatory, it's absolutely mandatory, no exceptions. Is that what you're saying? It appears to be so. But again, what if the behavior of the person was that, well, I'm not going to say if I'm opting out, and it's set for arbitration, and they don't show up? What's the effect then? Well, if it's still going to say it's mandatory? Well, it was mandatory that it was submitted there, yes. Now, if they chose not to go, in spite of the fact that the duty to comply with the statute had been made, then that would be on the person who didn't appear. However, in this case, what we had was a client who, initially responding to the attorney's petition, disputed it. She raised a dispute regarding the attorney's fee, so there was a controversy. The duty was on the judge. But she raised a dispute about the fees. She raised a dispute about the arbitration issue. Not arbitration itself. In this case, counsel, the initial claim by the attorney was for $47,000, or over $40,000. Correct. And then the judge just sat down in Chambers or Harvard and said, all right, he was told apparently by Ms. Grant Weaver's previous attorney that they'd settle for $25,000. They had to sign an agreement for $25,000 of roughly a 45% cut. Had it gone to mediation, and let's say mediation said, instead of giving her a 45% break, let's give her a two-thirds break. She'd only have to pay $15,000. Did she have $15,000 to pay? No, she didn't. So how would mediation have helped? How is the fact that she didn't go to a program that would order her to pay any money, but she doesn't have, how would she have been helped by that? Well, it's not necessarily that that would have helped her as far as her ability to pay, but she would have still had a right to have that hearing. Even though she wouldn't pay anything, no matter what the result was? Well, even if she couldn't pay anything, yes. Even if she couldn't pay. There are several times where judgments are earned, and people just don't have the money. All the time, actually. Constantly, every day. But I think in this particular case, this is phrased as an agreement of the parties, and it's not. The evidence indicates that this is more of what the lower court wanted. There was a hearing. The lower court made a finding. There was a hearing, and the lower court made a finding of what it found to be reasonable fees were, and recommended that. The parties could not settle this matter. It wasn't like they met and decided that $25,000 was what they agreed upon. This was not their agreement. This came from the court. This is what the court recommended. So this is where in form it looks like an agreed order. This is really just what the judge wanted at this time. This was no agreement from my client. Who signed off on the agreed order, though, counsel? Who signed off on that agreement? Just my client signed it. So what do we take from that? She felt she had no choice but to sign it. From what she was seeing, she had been through four lawyers. Not one thing that she sought was granted. Nothing in her benefit was granted. As far as she's concerned, any act that was done by her lawyers was futile. So she's seeing what's going on in court. She hears a recommendation from the judge, combined with threats that if you don't take this, there are going to be consequences. Quite frankly, she felt like she had to do this, and there was no other choice for her to do this. So these circumstances are not circumstances under which we can say this was a willful, involuntary agreement here. And I implore you to look at the substance of the circumstances surrounding this, and not just the labeling of this as an agreement. Because I don't think that's what it is. And there's no, the record is contrary to that, and it supports the fact that this was a result after the matter had been before the judge in dispute and controversy for almost a year. So your argument would be that we should send it back for her to have an arbitration or mediation, to submit to the child court the instruction, refer this to mediation, and whatever that order is for mediation, she'll refuse to pay because she's poverty-stricken. And then you can come up and see us again a couple years from now, and then we'll decide. After she's poverty-stricken, the court will proceed to a hearing, the same divorce court now, a post-decree court, will decide whether or not she really is poverty-stricken. And if the court finds after a hearing she's not poverty-stricken, the judge will enter an order, she has to pay X number of dollars, including whatever new fees have been generated throughout this appeal and the new hearing, and then lock her up, if that judge decides she's not poverty-stricken. That's the solution you're asking for? No. What is the solution you're asking us to enter, then? We just want fairness, and for the laws to be applied. We don't think that a result or something should be held up valid through a failure to comply with the law. This is a poisonous tree that everything that's been yielded from it, it cannot stand because it's not built on the foundation of established principles of law. It's just not fair. So what my client is just wants a fair opportunity for this issue concerning attorney's fees to be dealt with in a manner that is afforded her under the statutes. I understand that, but her intention, her, she has absolute inability to pay it. And so why would, are we required to perform a useless act and start over again? It's not a useless act. Requiring her to have the benefits of the law is what this court is for. Even though she'll never pay a dime of it? Even if she wouldn't pay a dime, she still has an opportunity to be heard and to litigate the matters according to law and with fairness. Well, if it's litigated as opposed to agreed to, won't that increase the fees that the other side is seeking? Not necessarily. Had it gone to arbitration, this stuff would have probably been expedited much easier. The cost would have been certainly cheaper. Than an agreed order? That's assuming there was an agreed order. We're contending that this is not agreed and that this is a result of her being forced into this position because she was being denied the opportunities that she should have had under law. Period. That's all she wanted was for the law to be complied with. The law is clear. The language is right there. It's plain language. It's like, well, why should the court be able or a party be able to just disregard the law? That's all. I want to make sure you have five minutes left for your rebuttal, sir, if you will conclude. I just want to point out that in our argument we didn't, after reading counsel's brief, we recognize a change in the perspective of how we analyze these cases with regard to jurisdiction. We're not claiming that the court did not have jurisdiction, but that the exercise of it was beyond what was authorized. And it was for that reason that it was void or either voidable for exceeding it. And in light of the other issues that I think we did spell out in our argument, I will yield to the appellee at this point. You'll have five minutes for rebuttal, sir. Thank you. Mr. Feinstein. Good morning again, Justices and counsel. I just wanted to touch on one issue that wasn't talked about and wasn't dealt with in the reply brief, and that addresses the jurisdiction of this Court. Now, I've learned enough after 32 years of doing this that I don't tell the Court whether it has jurisdiction or not. The Court ultimately tells us. So that's why in my brief I merely raised that issue that possibly the 2008, the 2009, the 2010 judgment orders should have been appealed within 30 days thereof and would therefore divest the Court of Jurisdiction. I have no answer to it. Frankly, the more I do of this, the less I understand about appellate jurisdiction, but I believe we're just doing our part to bring it before you and let you determine that. And it's briefed, so that's that. With respect to counsel, and again, I did have some difficulty between the briefs and the arguments responding to some of this, but it essentially boils down to two things. Number one, were these orders void? And then number two, if they were not void, were they or any of them an abuse of discretion? Those answers I believe are very clear. First of all, I have really two words to say, Belleville, Toyota. And again, it concerns me that counsel didn't raise that, didn't really deal with it in the reply brief or anywhere else. And I've cited this very panel's decision in the Johnson v. Ingalls Hospital case just a couple of years ago that really laid out the rules on jurisdiction. This is clearly a justiciable matter. Section 508 petitions were filed. The Court had jurisdiction. Even if any aspect of the case, which happened to be my case of a couple of years ago, where it was also a 508C issue, and my client, Mr. Ducey, failed in two respects to comply with 508. Number one, and it would seem to be fairly important, he didn't file it on a timely basis within the 30 days, and he also hadn't withdrawn at the time he filed his fee petition, which is also required. One of the issues in that case was whether the statutory noncompliance voided or made voidable the orders, and the Fifth Division said it did not, citing, amongst other cases, Belleville, Toyota. It seems to me very clear that irrespective of procedurally what happened, it was a justiciable matter. The trial court was exercising jurisdiction. And ultimately, as Justice Quinn pointed out, appellants signed an agreed order, which I'm now being told is not an agreed order. But I guess that gets down to the abuse of discretion issue. And again, part of the problem that I have, and this Court may have, in dealing with that is the fact that other than the motion to reconsider, were provided with no transcripts. So a very paltry record on appeal, and no bystanders report. We know that it's the appellant's burden to adequately support the points on appeal, both in terms of a report of proceedings, and then also in a cogent brief that cites case law, that cites properly to the record. It's not your burden. It's not my burden. There's a strong presumption that the trial court was right. Well, at the end of the day, it's a really straightforward case. The trial court locked up Ms. Grant-Weaver for failing to pay attorney's fees. And I can just tell you from a personal standpoint, speaking for nobody but me, I don't like that. I understand that dads have to go to jail. I happen to like that a lot. I get a big kick out of it when males refuse to pay for child support. They are dead beats. I don't care what congressmen say. They're dead beats. And they belong behind the bar, frankly. To do the same thing, though, to people who have failed to pay an attorney's fees, smacks of debtor's prison to me. What kind of hearing was held when the trial court set a cash bond on the writ of attachment, the body attachment, for Ms. Weaver that she should go to jail for failure to come up with $25,000 cash? What evidence did he hear to show that she had $25,000 cash? Justice Quinn, it was she, Judge Mathine. I'm told there was a hearing again. I'm a little limited, as is the court, because no reports of proceeding were provided. And just so you know, I did not represent Ms. DiMaggio in the trial court. So what was and what was not presented, I cannot really tell the court. What I can tell the court is that the issue, first of all, the contempt issue itself, or the jailing or whatever, to me, that's five miles behind us. The issue now are the orders to pay and whether or not those should be upheld. And again, regardless, if somebody's going to complain about what happened in the trial court, to get here, to get your attention and to get a reversal, they have to support their argument adequately. And that would include reports of  include reports of misconduct. And that would include reports of misconduct. And there are all kinds of ways to do it. And she had, apparently, she had lawyers, didn't do that. So now we're at the point of these orders, starting with the ones she agreed to, and then the subsequent ones that were caused, again, by her noncompliance, should they stand. We do know the attachments didn't go that far. Right. Was it on the court's own motion, I believe, they withdrew that and a judgment was entered. Exactly. Right. So that's where we are now, regardless of how we got there. And I don't believe there's anything in the record that supports that she was threatened with jail for failure to pay a judgment. No. Certainly not. Nor any other threats that counsel seems to talk about when he's talking about now that it wasn't her agreement, that there was some sort of unconscionability or coercion, which, again, there's no evidence of that in the record. There's no reports of proceeding. And in her own brief, she quotes the letter that her lawyer at the time sent her, dealing with whether or not you should agree. And I think that ties into Justice Quinn's questions about, well, she wasn't going to pay $25,000. She wanted to file bankruptcy. She wouldn't pay $10,000. She wouldn't pay $5,000. She got advice from her lawyer, which she herself put in the record, saying, hey, this is a pretty good deal. You know, she's asking for $48,000. You could lose. So we're giving you the opportunity to get rid of it by $25,000. And she took it. But she didn't comply with any of the procedures. And now she's complaining. She's saying everybody else didn't comply with the law, didn't comply with procedures, when she's the one who didn't comply with any of the procedures and has not complied with the law in bringing this before you. With respect to the arbitration issue, mediation, as the justices have indicated, exactly what – I don't know what she's asking for. She wants to go back and mediate it and get lesser or possibly more against her and then not pay. But the point of it – I mean, the legal point that I tried to mine out of this is this is something that's waivable. And to me, again, it was. And I looked at the Baniak case. Again, it's the same thing. They said, well, these are requirements, but requirements that are not jurisdictional can be waived. You have to look at the conduct of the parties. And that's what happened here. It wasn't – But the Baniak didn't address the idea about the mediation, right? It was basically – Well – The single issue really was the attorney's fees was filed more than 30 days after the divorce. It was that. And also there's a requirement in 508C that your fee petition must be filed after you have withdrawn, which was also not complied with. But, again, the issue was simply does that void out anything that happens or can these things be waived? And I also cited the Lindsay Robinson case, which I think is another Judge Mathein's case that was affirmed, where, again, it was a timeliness issue. They didn't file their petition in time. And the court said, again, it's waivable. It wasn't addressed. It wasn't objected to, as here. Counsel, you say in your brief that the Stroud Court found that ADR was waived and you cite to a bond and page of the record. Yes. Can you describe that for me? The order? Yeah. It's the order of, I do have it here. I believe it's the same order denying motion to reconsider. I'm sorry, but I do have them all here. I just looked at them before I got up here. And it has now disappeared. That's all right, counsel. But it is, it's in the appendix as well. If you find it before we do that. It's the order, certainly. And I apologize for not having it. I usually have it on my fingers. You can look for it while he's having his reply. Yeah, while he's making his reply. May I then? Thank you. All right. I don't know if the court even wishes me to address the argument that's first raised in the reply brief of accord and satisfaction. And, again, that's why I'm just having trouble dealing with this particular appeal. We know accord and satisfaction is an affirmative defense. It has to be raised, adequate pleading in the trial court. None of that was done. It wasn't raised in the appellate brief. Now we cite some cases in the reply brief. And all I'll say, besides the fact that it was waived below and it was waived here, is that it wouldn't apply anyway because accord and satisfaction requires, the satisfaction is the complying with the agreement, which she didn't do. So, again, why that's raised here, I don't know. There was a complaint about the court's recommendation of $25,000 and some inference that that caused, again, any sort of coercion. We do this every day. We have pretrials. We have recommendations. That's what happened. They pretried it. And whoever came up with the $25,000, that's ultimately what was suggested to the lady to do. She had a lawyer. She had very good lawyers, by the way, Lake Tobac, one of the top firms. So, I mean, and there's no allegation that they did anything wrong. She made the agreement. She just didn't comply with it. And I agree that it's just an issue of is it an abuse of discretion? And there's been no showing whatsoever that there's an abuse of discretion. I'll otherwise stand on my brief unless the Court has any additional questions, and I will look for that provision of the order. We ask that the trial court be affirmed if the appeal is not dismissed for lack of jurisdiction. Thank you, Justices. Thank you, sir. Mr. Shelton? With respect to the Banting Act case, I'd note that a reading of that case will indicate that the focus there was on the court's jurisdiction and not the issues of just disability. And in that case, it did not involve the court's duties to comply with statutes, where in this case it does. So it's distinguishable there. As far as transcripts, I tried to get every piece of transcript that I could find. And as it turned out from the court reporter's office, oftentimes there was no stenographer there, and they simply did not have them. The record, I believe, was sufficient to refer to the occurrences, not necessarily what statements were made, but the simple fact that certain things were done as documented. With regard to this accord and satisfaction, the court treats this so-called agreed order, which is something I've never seen, on one hand as an agreed order, but then enforces it as agreement by it. They treat it as agreement between the parties, but then also it treats it as an order of the court finding contempt matters in it. And it was seen that under Doctrine of Estoppel, if Deborah received the $25,000, which my client did post, she was actually arrested, and she had to pay the $25,000 to purge the contempt, and that money was forwarded to Deborah DiMaggio. The terms of the purported agreed order were satisfied. At this point, the claim is exhausted. It's been resolved. There should be no jurisdiction to go any further and add additional attorney's fees in the second petition that is labeled a final petition, which presumably is not what the legislature intended, to create one final petition after another. The first one should have resolved all the claims. There should not have been all this additional litigation. Why didn't the court? Would there have been all this additional litigation if she had complied when the judge told her to comply? There would not have been this additional litigation if the judge had simply, because the attorney's fees were within her discretion, she made the finding that $25,000 is reasonable. Why not just enter a judgment on it? Done. It's out of here. But you didn't appeal the contempt findings when they first came. We get those every day. Well, once a week, somebody gets locked up in divorce court or civil court, and guess what? We're sitting around. People come in and say, oh, the judge locked somebody up in civil court. We go, oh, that's kind of interesting. We look at it. We let them out nine out of ten times. But if nobody asks us to do that, then we don't get involved. And if they come in with the money then, how do we get involved? If no appeals filed, we don't look around for things. Well, these attorneys have to get paid. The attorneys, no one was getting anything that was beneficial to Donna. They withdrew. At the time that this stuff was going on, she had no lawyer. Well, one lawyer did wind up getting involved, but for the most part, each lawyer withdrew. She was essentially without representation on her own in pretty much a shark infested waters. Why the court, if this had gone to arbitration, as in any other case where there was an arbitration award, and for the most part, the court was simply acting in a way, acting as an arbitrator, and made a finding. What the court should have done is simply reduced that finding to a judgment, enter a judgment on it. In fact, the court did eventually do that. But it was only after I came in there and told the court, what's going on here? All these violations of procedure have viewed it this, this, and this. And the court itself said, there will be endless petitions. This will potentially never stop. That was never contemplated to be had by the legislator. This, the normal practice, would have simply been to enter a judgment. Judgment would have been entered. Enforcing it would have been another issue. It wouldn't have had anything. The case would have been over. Period. Why that did not happen? Counsel, I'm looking at page three of the order. By the way, counsel, I found where the court makes a finding that there's no requirement to attend arbitration. It's on page two of that order from, I can't read the big here. But anyway, then the court in the order section says, interest on the judgment in favor of the DiMaggio firm shall be retroactive. So does that suggest that a judgment was entered? It suggests that a judge did not understand the law. And whatever, it's just a bleeding. Whatever could be done against this woman was done. Every deviation from, there was no compliance with any law. There was, no, I don't think so, Your Honor. All right, thank you. I don't think so. Please conclude. In conclusion, Your Honor, we, or Your Honors, we're asking that these matters be reversed and that this case either be sent back for there to be compliance with this or that there be an accord and satisfaction found and that this judgment for this three times with the court found to be reasonable be stopped by the payment of $25,000. Thank you. Thank you. This matter is taken under advisement. Court is adjourned.